GEORGE ET AL., APPELLANTS, v. NORTHERN PACIFIC RY. CO., RESPONDENT.

(No. 4,256.)

(Submitted January 8, 1921.  Decided February 14, 1921.)

[196 Pac. 869.]

*Automobiles—Railroad Crossings—Contributory Negligence—Burden of Proof.*

Personal Injuries—Contributory Negligence—Matter of Defense.
   1.   Contributory negligence is a matter of defense to be established by preponderance of the evidence.

Same—*Prima Facie* Case—When Made.
   2.   Plaintiff in a personal injury action has made out a *prima facie* case when his evidence discloses injury to himself and that the negligence of the defendant was the proximate cause of it.

Same—Presumption of Negligence—Burden of Proof.
   3.   Where plaintiff's evidence raises a presumption that he was not in the exercise of due care at the time he was injured, and he then fails to introduce other evidence to remove the presumption, he may be properly nonsuited.

[59 Mont. 162.] ·

Automobiles—Railroad Crossing—What Constitutes Contributory Negligence.

4. A person going upon a .railroad crossing without first taking the precaution of assuring himself by actual observation, in such a manner as to make the act of looking and listening reasonably effective, that there is no danger.from an approaching train, is guilty of contributory negligence in case of injury and cannot recover damages, the failure of the trainmen to keep a lookout and give warning signals of the approach of the train not relieving him from the necessity of making a vigilant use of his senses in that regard.

Driving Automobile Over Railroad Crossing Without Taking Precaution—Contributory Negligence.

5. *Held,* that nonsuit was properly granted where it appeared that plaintiff, who on approaching a city railway crossing in an automobile at night, had stopped to permit a freight train to pass and then, without looking in the opposite direction to see if a train was coming from there, drove on, was struck and injured, he having been guilty of contributory negligence in failing to exercise the care which an ordinarily prudent man would' have exercised under like circumstances.

*Appeal from District Court, Custer County; Chas. A. Taylor, Judge.*

ACTION by Jake George and another against the Northern Pacific Railway Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

*Mr. Sharpless Walker* and *Mr. W. C. Packer,* for Appellants, submitted a brief; *Mr. Walker* argued the cause orally.

A railroad company is bound to use special care and watchfulness at points on its track where the presence of persons may be reasonably anticipated; and if at such points a person has acted with reasonable care and prudence, but is injured or his property damaged by reason of the negligence of the railroad company, the latter is liable. No burden rests upon one about to cross a railroad track except that he exercise reasonable care and prudence, and whether he has done so is a question of fact for the jury to determine. The defendant having failed to ring the locomotive bell or blow the whistle; having neglected to provide a flagman or watchman or gates

---

4. Care which must.be exercised at railroad crossings of highways, see notes in 26 **Am. Rep.** 207; Ann. Cas. 1914A, 536.

Failure of railroad company to give statutory signals on approaching crossing as excuse for traveler's contributory negligence, see note in 6 Ann. Cas. 78.

Failure to stop, look and listen at railroad crossing as negligence *per se,* see note in 1 A. L. R. 203.

or other warning of the approach of its trains at the crossing at the time of the accident; having concealed the approach of one train by the presence of another, and having operated its train at an excessive rate of speed and in violation of the city ordinances of Miles City, it acted at its peril. On the other hand, the plaintiff having stopped, looked and listened; having been an experienced chauffeur, and having exercised due care and prudence, was clearly acting within his rights when he attempted to cross the defendants' tracks. (*Dahmer* v. *Northern Pac. Ry. Co.*, 48 Mont. 152, 136 Pac. 159, 142 Pac. 209; *Walters* v. *Chicago, M. & P. S. Ry. Co.*, 47 Mont. 501, 46 L. R. A. (n. s.) 587, 133 Pac. 357; *Flannelly* v. *Delaware etc. Ry. Co.*, 225 U. S. 597, 44 L. R. A. (n. s.) 154, 56 L. Ed. 1221, 32 Sup. Ct. Rep. 783; *Eaton* v. *Southern Pac. Co.*, 22 Cal. App. 461, 134 Pac. 801; *Meyer* v. *Chicago, R. I. & P. Ry. Co.*, 134 Iowa, 722, 112 N. W. 194; *Schmidt* v. *Burlington, C. R. N. Ry. Co.*, 75 Iowa, 606, 39 N. W. 916; *Illinois Cent. R. R. Co.* v. *Coley*, 28 Ky. Law Rep. 336, 1 L. R. A. (n. s.) 370, 89 S. W. 234.)

In *Dieckmann* v. *Chicago & N. W. Ry. Co.*, 145 Iowa, 250, 139 Am. St. Rep. 420, 31 L. R. A. (n. s.) 338, 121 N. W. 676, it was held that contributory negligence is peculiarly a question of fact, and the court should not attempt to dispose of it peremptorily save where the circumstances are clear and undisputed, and are of such character that fair and unprejudiced minds cannot arrive at different conclusions therefrom. (*Parker* v. *Des Moines City Ry. Co.*, 153 Iowa, 254, Ann. Cas. 1913E, 174, 133 N. W. 373; *Weaver* v. *Southern Ry. Co.*, 76 S. C. 49, 121 Am. St. Rep. 934, 56 S. E. 657.)

In *Wallenburg* v. *Missouri Pac. Ry. Co.*, 86 Neb. 642, 37 L. R. A. (n. s.) 135, 126 N. W. 290, the court held that it was the duty of a pedestrian on a highway, in approaching a railway crossing, to look and listen for moving trains before attempting to cross the railway, but, if he does so, he is not necessarily negligent because he did not look at the most advantageous point, and where, if he had taken heed, he probably would have seen an oncoming train and avoided injury.

In *Russell* v. *Oregon R. & Nav. Co.*, 54 Or. 128, 102 Pac. 620, where the complaint alleged that the defendant was negligent, among other things, in not maintaining a watchman or automatic sounding signal or other appliance to warn travelers of approaching trains, the court held that at a crossing within a city, or where the travel is great, reasonable care would require a flagman constantly at the crossing, or gates or bars, so as to prevent injury.

In *Willett* v. *Michigan Cent. R. Co.*, 114 Mich. 411, 72 N. W. 260, the court held that where a railroad company temporarily obstructs the view of its tracks by leaving freight-cars on side-tracks, and a train strikes one attempting to go over a crossing in a populous part of a city, the question as to whether the company was negligent in not providing some method for giving notice of approaching trains should be submitted to the jury. (See, also, *Pittsburgh, C. C. & St. L. R. Co.* v. *Terrell*, 177 Ind. 447, 42 L. R. A. (n. s.) 367, 95 N. E. 1109; *Chicago, B. & Q. R. Co.* v. *Pollard*, 53 Neb. 730, 74 N. W. 331; *Rouse* v. *Blair*, 185 Mich. 632, 152 N. W. 204; *Christensen* v. *Oregon S. L. R. Co.*, 29 Utah, 192, 80 Pac. 746.)

In *Riley* v. *Northern Pac. Ry. Co.*, 36 Mont. 545, 93 Pac. 948, the court held that the absence of a city ordinance requiring a railway company to provide a flagman at a crossing is not conclusive upon the question whether or not the company was negligent in failing to provide one of its own accord, and that it was oftentimes a question of fact, to be determined by the jury, whether, in the exercise of that degree of care with which the defendant is, charged, it should or should not maintain a flagman.

*Messrs. Loud & Leavitt, Messrs. Gunn, Rasch & Hall* and *Mr. W. W. Patterson,* for Respondent, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

Applying the rule that the amount of care is governed by the circumstances of each case, which has been recognized by

the authorities generally, it has. been repeatedly held that where one attempts to go over a railroad crossing, and his view in the direction from which the train came that struck him is obstructed by a train going in an opposite direction on a parallel track, he should wait until the last-mentioned train has gone far enough to enable him to see sufficiently far ahead to make it certain that he will not be struck by a train approaching on the next track from behind the other train. (*Fletcher* v. *Fitchburg R. Co.*, 149 Mass. 127, 3 L. R. A. 743, 21 N. E. 302; *Purdy* v. *New York Cent. R. Co.*, 33 N. Y. Supp. 952; *St. Louis etc. Ry. Co.* v. *Paine* (Tex. Civ. App.), 188 S. W. 1033; *Marty* v. *Chicago etc. Ry. Co.*, 35 Minn. 108, 35 N. W. 670; *Stowell* v. *Erie R. Co.*, 98 Fed. 521, 39 C. C. A. 145; *Lamb* v. *New York Cent. etc. R. Co.*, 18 App. Div. 579, 46 N. Y. Supp. 404; *Central Ry. Co.* v. *Smalley*, 61 N. J. L. 277, 39 Atl. 695; *Keller* v. *Erie R. Co.*, 183 N. Y. 67, 75 N. E. 965; *Bancroft* v. *Boston etc. R. R.*, 97 Mass. 275.)   By reason of the fact that Wise's view was cut off by the west-bound freight, and by reason of the fact that he could not stop after coming on the west-bound track, he should have stopped his automobile at the west-bound track. (*Griffin* v. *San Pedro etc. R. Co.*, 170 Cal. 772, L. R. A. 1916A, 842, 151 Pac. 282; *Murray* v. *Southern Pac. Co.*, 177 Cal. 1, 169 Pac. 675; *Rayhill* v. *Southern Pac. Co.*, 35 Cal. App. 231, 169 Pac. 718; *Headley* v. *Denver & R. G. R. Co.*, 60 Colo. 500, 154 Pac. 731; *Reigner* v. *Pennsylvania Ry. Co.*, 258 Pa. 257, 101 Atl. 995.)

Failure to discover a train which was in plain view for 300 feet, and which could have been discovered by the turn of the head, was held to be contributory negligence as a matter of law in *Hayden* v. *Missouri etc. Ry. Co.*, 124 Mo. 566, 28 S. W. 74. (*Yazoo etc. R. Co.* v. *Williams*, 114 Miss. 236, 74 South. 835.)

Wise testified that he "couldn't see or hear anything except just the rattle of the cars." Under such circumstances it was impossible to distinguish the noise of the coming freight from

that of the intervening freight, and it has even been held that failure to stop and listen on account of the noise made by a wagon going over a hard pavement was in itself sufficient to bar a recovery. *Blackburn* v. *Southern Pacific Co.*, 34 Or. 215, 55 Pac. 225.) His duty to stop was imperative by reason of the fact that this noise was temporary, as the eastbound freight would soon have been out of hearing. (*Willoughby* v. *Erie R. Co.*, 77 N. J. L. 149, 71 Atl. 41; *Manley* v. *New York Cent. R. Co.*, 45 N. Y. Supp. 1108; *Baltimore & O. R. Co.* v. *McClelland*, 69 Ohio St. 142, 68 N. E. 816; *Keyley* v. *Central R. Co.*, 64 N. J. L. 355, 45 Atl. 811.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by plaintiffs to recover damages for injury to their automobile alleged to have been caused by the negligence of the defendant.

The defendant's line of railway passes through the city of Miles City. The record does not disclose definitely its course with reference to the points of the compass. For present purposes it may be described as extending east and west. A street of the city, designated as Main Street, extends north and south over defendant's track yard at a right angle a short distance west of its station. At this point there are four tracks which, for convenience, may be referred to as tracks 1, 2, 3 and 4, in order from north to south. They are on a level with the street. They are seven or eight feet apart. Defendant maintains a crossing over them. Main Street is the principal way of travel from the business portion of the city on the north to the portion lying to the south, and is in constant use by the public for the passage of vehicles and pedestrians. On the west side of the street and abutting thereon, near track 1, is an elevator building. On the east side, in relatively the same position, are buildings used by the owner in conducting a lumber business. To one approaching the crossing from the north, the view is therefore

obstructed both toward the east and west. There are no buildings along track 4, either to the east or west. One, approaching from the south has a clear view of the several tracks, except when cars are left standing on them or when a train is passing. All of them are straight.

In December, 1916, the plaintiffs were engaged as copartners in conducting a taxicab business. About 6:30 o'clock on the evening of December 24, plaintiff Wise approached the crossing from .the south, driving the automobile in question along the middle of the street. Finding a freight train passing on track 3 toward the west, he stopped five or six feet from track 4 to wait for the train to pass, meantime keeping his motor going. When the rear end of the caboose had reached the west line of the street, he proceeded. As he was about to cross track 2, the forward part of the automobile was struck by the locomotive of a second freight train going in the opposite direction, and partially wrecked.

At the trial the court granted defendant's motion for a nonsuit, on the ground that plaintiffs' evidence disclosed, as a matter of law, that Wise contributed by his own negligence to the injury of which they complain. The appeal is from the judgment. The question submitted is whether the trial court drew the correct conclusion from the evidence.

Plaintiff Wise was driving alone. Two witnesses, Hausauer and Miss Darsey, who were waiting for the west-bound freight to pass, were sitting in an automobile north of track 1. Their view to the west was obstructed by the elevator building. When the rear end of the caboose of the train had reached the west line of the street, Hausauer, who was driving, started to pass over the crossing; but before he reached track 2 he heard the east-bound train approaching and stopped in time to avoid a collision. Miss Darsey stated that she heard and saw the train approaching about 200 feet away when the automobile was brought to a stop. Wise had at one time been a fireman on a locomotive. At the time of the collision he and his partner had been conducting the taxicab business about

five years.  He was well acquainted with the crossing because it was continually in use through the day and early evening and he had often passed over it.  When he moved from the south of track 4, he put his automobile in low gear.  As he proceeded he changed to intermediate.  Just then the collision occurred.  The following excerpts from his testimony show what precaution he took before he attempted to make the crossing: ''The train was going west, probably four or five miles an hour.  When that train cleared the crossing, I couldn't see or hear anything except just the rattle of the cars.  I could see in that direction or beyond the rear of the passing freight train going west down  *  *  *  the main track about probably sixty feet past the caboose.  I saw no train there in addition to the rear end of the one departing.  I heard no noise of any train.  At that time after the train passed the crossing going west I looked up and down the track and listened, and I couldn't see nothing so I started across.  I got across to the main line when this east-bound freight came through and struck the car.  *  *  *  I had gone about thirty feet from the point where I stopped to permit the west-bound train to pass to the point where I was struck by the east-bound train.  When I first saw the train that hit me, it was about forty feet from me, maybe thirty or forty.  When I saw the train, a front wheel of my car was pretty near on the main line that the train was on, and I just got up on the track when it struck me.  I was off about six feet and could not stop.  I had gone about six feet from the time the train went about forty feet.  I did not hear any bell ringing there.  No locomotive bell or any bell ringing along the track.  They whistled just as they struck me—just like that, they whistled.  I think the whistle was blowing when the engine hit my car.  I saw another car there, Herbert Hausauer's.  He was going east.  There was no watchman or flagman at that crossing.  There were no gates or bars across the street.  I did not receive any warning of any kind or nature as to the approach of that train previous to the time I first saw it forty feet

away.   *   *   *   The rear of the caboose was right over the boardwalk nearest the Miles City railroad station, or just clear of that walk; something like that, and that's when I started up.   Before I started up I looked toward the direction from which the east-bound train was coming.   I looked both ways as I started up.   A man keeps watching anyway, you know.   From the time I started up after the west-bound freight had cleared the street, I didn't continue to look toward the direction from which this east-bound freight came until the time I actually discovered it.   A man wouldn't keep looking up the track one way.   A man crossing the track wouldn't look in one direction.   I looked and started across and you naturally keep your eyes on them anyway after you looked; looking to see that it was clear, that's all.   *   *   * A man naturally looks ahead, too.   Any possible automobile that might be coming from in front.   *   *   *   I had just two directions in which to look.   Just directly ahead of me for any possible automobile or other vehicle that might be crossing, and to the west of me along the railroad tracks in the direction from which the east-bound freight came.   My view was cut off on my left [west] so I couldn't see anything there until I got out here toward this track.   I couldn't see it until I got past this caboose, and when I got past, well this other engine bore down on me  so close that I couldn't stop; if I had, I would have stopped right square in front of it.   I couldn't stop.   *   *   *   From the time I started up my automobile going across the crossing the caboose cut my view off just across the tail of it on the main line there, you see.   There was nothing else.   So far as any light is concerned, seeing objects by means of light, if that train had not been there I could have seen them of course.   *   *   *   The only thing that obstructed my view that kept me from seeing this east-bound freight was this west-bound freight.   I believe there were two arc-lights there on either side of that crossing.   There were lights there at that time.   I couldn't say whether they were lit at that time, but I think they were.  ·

[59 Mont. 162.]

I couldn't say whether they were or not. There was some artificial light at that crossing.''

In this jurisdiction it is the rule that contributory negligence [1–3] is a matter of defense to be established by preponderance of the evidence. The plaintiff has made out a *prima facie* case when his evidence discloses injury to himself and that the negligence of the defendant was the proximate cause of it. (*Nelson* v. *City of Helena,* 16 Mont. 21, 39 Pac. 905; *Hunter* v. *Montana C. Ry. Co.,* 22 Mont. 525, 57 Pac. 140; *Monson* v. *La France Copper Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243; *Therriault* v. *England,* 43 Mont. 376, 116 Pac. 581; *Howard* v. *Flathead Ind. Tel. Co.,* 49 Mont. 197, 141 Pac. 153.) It is the rule, also, that when the circumstances attending the injury, as detailed by the plaintiff's evidence, raise a presumption that he was not, at the time, in the exercise of due care, he has failed to make out a case for the jury. The burden is then upon him, and if he fails to introduce other evidence to remove the presumption, he is properly nonsuited. (Cases cited *supra; Harrington* v. *Butte, A. & Pac. Ry. Co.,* 37 Mont. 169, 16 L. R. A. (n. s.) 395, 95 Pac. 8; *Longpre* v. *Big Blackfoot Milling Co.,* 38 Mont. 99, 99 Pac. 131; *Zvanovich* v. *Gagnon & Co.,* 45 Mont. 180, 122 Pac. 272.) In *Sherris* v. *Northern Pac. Ry. Co.,* 55 Mont. 189, 175 Pac. 269, this court, in speaking of the care to be exercised by a person attempting to pass through the yard of a railway company, said: ''Every person is bound to an absolute duty to exercise his intelligence to discover and avoid dangers that may threaten him. When, therefore, a plaintiff asserts the right of recovery on the ground of culpable negligence of the defendant, he is bound to show that he exercised his intelligence to discover and avoid the danger, which he alleges was brought about by the negligence of the defendant.'' This statement of the rule requires the person [4] approaching a railway crossing to take all reasonable precaution to assure himself by actual observation that there is no danger from an approaching train. The failure of the

persons in charge of the train to keep a lookout and to give warning signals of its approach to the crossing does not relieve the traveler from the necessity of making a vigilant use of his senses to ascertain whether it is safe to proceed. (*Railroad Co.* v. *Houston,* 95 U. S. 697, 24 L. Ed. 542 [see, also, Rose's U. S. Notes]; *Hunter* v. *Montana C. Ry. Co., supra.*) It is not always sufficient if he does look and listen. The obligation resting upon him is to exercise care to make the act of looking and listening reasonably effective. (*Sprague* v. *Northern Pac. Ry. Co.,* 40 Mont. 481, 107 Pac. 412.) If he goes upon the crossing without taking this precaution, he is guilty of contributory negligence, and, if injured, cannot recover.

There is foundation in the evidence for but one conclusion, [5] namely, that if Wise had used the most ordinary precaution, his automobile would not have been injured. There was no emergency calling for haste. The west-bound train was only a temporary obstruction of his vision, because it was in motion. His range of vision toward the west was rapidly increasing. He was familiar with the crossing. If he had waited for a few moments, he would have had a clear view for a long distance toward the west; or, even after he had started, if he had kept watch toward the west while traveling the distance of thirty feet before he reached track 2, he could have stopped. That he did not use his sight is made clear by the testimony of Hausauer and Miss Darsey. Their line of vision was cut off by the elevator, a stationary obstruction. They were nearer to track 2 than was plaintiff Wise, for they came to a stop at track 1; whereas, he came to a stop at track 4. Both heard and Miss Darsey saw the east-bound train in time to stop before they reached track 2 and thus avoided a collision. This clearly indicates that, while Wise testified that he looked both ways as he started up, he could have seen the east-bound train if he had continued to look. Interpreting his testimony in the light of these circumstances, one is forced to the conclusion that he failed to exercise the care which an ordinarily

prudent man would have exercised under like circumstances. The nonsuit was therefore properly granted.

Counsel for the defense refer in their brief to several cases from other jurisdictions which are more or less directly in point. It is not necessary to notice them in detail. From among them we cite the following: *Fletcher* v. *Fitchburg Ry. Co.*, 149 Mass. 127, 3 L. R. A. 743, 21 N. E. 302; *Purdy* v. *New York C. Ry. Co.*, 87 Hun, 97, 33 N. Y. Supp. 952; *St. Louis etc. Ry. Co.* v. *Paine* (Tex. Civ. App.), 188 S. W. 1033; *Marty* v. *Chicago etc. Ry. Co.*, 38 Minn. 108, 35 N. W. 670.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES REYNOLDS, COOPER, HOLLOWAY and GALEN concur.

Rehearing denied March 21, 1921.