FARNUM, Respondent, *v.* MONTANA–DAKOTA POWER CO., Appellant.

(No. 7,339.)

(Submitted February 2, 1935. Decided March 4, 1935.)

[43 Pac. (2d) 640.]

218

*Messrs. Hildebrand & Warren, Mr. Paul J. McGough,* of the Bar of Minneapolis, Minnesota, and *Mr. D. L. O'Hern,* for Appellant, submitted an original and a reply brief; *Mr. O'Hern* argued the cause orally.

*Mr. George W. Farr* and *Mr. Rudolph Nelstead,* for Respondent, submitted a brief; *Mr. Nelstead* argued the cause orally.

222

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action to recover damages for the loss and destruction by fire of certain personal property belonging to four others who had assigned their respective claims to plaintiff. The first cause of action relates to the destruction of a silage cutter and equipment; the second is to recover for the destruction of a corn conveyor; the third for the loss of a five-horse power motor; and the fourth for the loss of a thresher belt.

Plaintiff resided on and operated a ranch lying easterly from Miles City along the Yellowstone Trail. On September 8, 1932, the husband of plaintiff and employees were engaged in filling a silo. The articles of personal property above mentioned were then on the ranch of plaintiff, being used in this operation. The silo was located in the center of a circular barn. Near the barn were some stacks of hay and one of straw. About mid-afternoon of the day in question, a fire was noticed

by one of plaintiff's employees in the strawstack. It spread from the strawstack to the haystacks and from there to the barn, destroying all of this property, including the articles of personal property, the subject matter of this suit.

Leading from the Yellowstone Trail to the buildings on plaintiff's ranch is a lane along which was a power line, the property of the defendant, from a transformer to the buildings of plaintiff. Up to the transformer the power line carried a voltage of 6,600, and beyond the transformer a load of 110 volts was carried. Along the power line and under it were certain trees, which at various times had been trimmed by the defendant company, the last occasion on which this was done prior to the date of the fire being in the month of December, 1931. The husband of the plaintiff had consented to the trimming of the trees along and under the power line and authorized defendant's employees to cut down any and all of the trees which would tend to interfere with the power line, and some seven or eight were so cut down and removed. Defendant had advised the husband of plaintiff not to trim the trees. One tree, among others, was left standing along the power line, the branches of which extended over and above it, so that when the wind was blowing the limbs of the tree would come in contact with the wires of the power line. The line consisted of two galvanized iron wires, uninsulated and mounted on cross-arms 39 inches apart. The distance from the power line to the point where the fire was first noticed burning in the strawstack some 15 feet above the ground was approximately 87½ feet. On the day in question a strong wind was blowing from the northwest toward the tree last mentioned and from there in the direction of the strawstack.

The owners of the various articles of personal property involved in this suit had either loaned or rented them to plaintiff for use in the filling of the silo, and, as stated, had assigned their claims to plaintiff. This action does not involve the loss or destruction of the barn or any other property owned by plaintiff.

Plaintiff charged the defendant with negligence in the operation of its electrical transmission line, in that "the limbs of said tree could and would when a wind was blowing from a northerly or westerly direction come in contact with said electrical transmission wires, and that said wires being uninsulated could and would set fire to said tree, and that fire from said tree could and would be transmitted therefrom to said property, and knowing all of these things, it carelessly permitted said wires to be and remain in close proximity to the said tree and its branches." The defendant denied all negligence on its part.

The evidence disclosed that the strong wind blowing from the northwest continued during the afternoon and evening of the day of the fire. Numerous witnesses testified that on the evening of that day, after darkness had fallen, they observed limbs blazing on the tree; one or more limbs were found beneath it which had been burned off and the ends of which were charred. Burning embers from the tree were observed traveling in the direction of the strawstack. The witnesses quite generally agreed that the wind was not of the same intensity in the evening as it was in the afternoon, but they observed these embers traveling varying distances from the location of the power line; 60 to 65 feet was the maximum distance these embers or sparks traveled in the evening, according to the testimony.

The husband of plaintiff testified that at the time the strawstack was first observed to be burning, he went to the pumphouse for the purpose of securing water to put out the fire. The pump located therein was operated by an electric motor, and he found that no electricity was then available for operating the motor, and that all the power lines leading from the transformer to his house were "dead." He also testified that at the time the trees were last trimmed, in December, 1931, the employees of the company did not trim the limbs on the tree in question. He said in the course of his testimony: "They said they would have to cut their wires to cut that

tree. They left the branches of that tree over the wires at that time.'' This witness testified that he had observed twigs and branches burning on trees along the power line prior to the evening of September 8, 1932, and that he had reported the condition along the lane to employees of defendant. An expert witness testified on behalf of the plaintiff that a wind, causing the branches of the tree to come in contact with one of the uninsulated wires, could cause the branches of the tree to burn if the other wire was grounded, and that the fact that a blaze was observed was evidence that such a condition existed.

Defendant sought to escape liability by showing that immediately before the fire occurred an east-bound Milwaukee freight train passed the farm buildings of plaintiff. The center line of the right of way of the Milwaukee railroad over which this train passed was at the nearest point 1,420 feet from the strawstack, and by extending a line from the point on the strawstack where the fire was first observed to the tree in question along the power line and on the right of way of the railroad the distance was 1,750 feet.

The trial of the cause resulted in a verdict and judgment in favor of plaintiff. A motion for a new trial was made, heard, and denied. The appeal is from the judgment.

Defendant made a motion for nonsuit at the close of plaintiff's case, and a motion for a directed verdict at the close of the evidence, upon the ground ''that from the evidence it appeared that the negligent acts and omissions of the plaintiff directly, actually and proximately contributed to the fire in question and to the damage or injury sustained by the plaintiff.''

Defendant did not plead contributory negligence on the part of the plaintiff. It seeks to invoke the rule, long adhered to by this court and recently restated in the case of *Hughey* v. *Fergus County*, 98 Mont. 98, 37 Pac. (2d) 1035, 1037, as follows: '' 'When the circumstances attending the injury, as detailed by the plaintiff's evidence, raise a presumption that

he was not, at the time, in the exercise of due care, he has failed to make out a case for the jury. The burden is then upon him, and if he fails to introduce other evidence to remove this presumption, he is properly nonsuited.' (*George* v. *Northern Pacific Ry. Co.*, 59 Mont. 162, 196 Pac. 869, 870.) Otherwise stated, the rule is that when 'plaintiff's own case presents evidence which, unexplained, makes out prima facie contributory negligence upon his part, there must be further evidence exculpating him or he cannot recover.' (*Olson* v. *City of Butte*, 86 Mont. 240, 283 Pac. 222, 224, 70 A. L. R. 1352.)''

Defendant argues that because plaintiff and her husband had observed ''blazes'' along the power line prior to the day of the fire it was negligence on plaintiff's part to place the strawstack in close proximity to the power line, and therefore, by reason of this negligence, she is not entitled to recover. It is nowhere urged by defendant that it was free from negligence.

The storing of the straw, an inflammable material, by plaintiff on her own property, in close proximity to the power line, standing alone, was not negligence on her part. She would not be compelled nor required to anticipate negligence in the operation of the power line by defendant company. (*Le Roy Fibre Co.* v. *Chicago, M. & St. P. Ry. Co.*, 232 U. S. 340, 34 Sup. Ct. 415, 419, 58 L. Ed. 631; *Allen-Wright Furniture Co.* v. *Hines*, 34 Idaho, 90, 200 Pac. 889; *La Salle* v. *Central Ry. Co.*, 73 Or. 203, 144 Pac. 414.)

But it is argued that the plaintiff had previous knowledge of the existence of the offending instrumentality. Mere knowledge of an offending instrumentality does not constitute contributory negligence. (*Mullins* v. *City of Butte*, 93 Mont. 601, 20 Pac. (2d) 626; *Neilson* v. *Missoula Creamery Co.*, 59 Mont. 270, 196 Pac. 357.) It is an appreciation of, or an opportunity to appreciate, the peril that will bar plaintiff of recovery. (20 R. C. L. 111.) The husband of plaintiff had complained of the existing condition to the power company, as it inter-

fered with their service, causing their lights to "flicker." It is not at all clear from the record that the plaintiff, with knowledge of the condition existing along the power line, appreciated that it created a dangerous condition likely to cause burning embers from the tree coming in contact with the electric wires to travel the distance necessary to contact the strawstack.

In the case of *Wise* v. *Stagg,* 94 Mont. 321, 22 Pac. (2d) 308, 310, we said: "Generally, the question of contributory negligence is one of fact for the determination of the jury. It is only when but one reasonable conclusion can be reached from the facts that the court will determine the question as a matter of law." We are unable to say that the only reasonable conclusion which can be reached from the evidence in this case is that the plaintiff appreciated that the condition existing was likely to cause a fire in the strawstack at its location. Accordingly, the trial court was not in error in overruling the above motions.

The court over objection of defendant gave the following instruction to the jury: "You are instructed that the defendant was bound to exercise that reasonable care and caution which would be exercised by a reasonably prudent and cautious person under the same circumstances. Where the amount of electrical voltage carried over an electrical transmission line is great, and there is danger from such voltage, then the care increases as the danger does. The care to be exercised by the person conducting the business is commensurate with the increased danger."

It is contended by defendant that the duty of an electric company to insulate or make otherwise safe its wires in any particular manner was not absolute, but only to make them reasonably safe as to all the exigencies offered by the surrounding circumstances. In *Bourke* v. *Butte Electric & Power* Co., 33 Mont. 267, 83 Pac. 470, 474, this court, speaking of the duty of an electric company, said: "It would hardly do to say that the defendant can only be required to exercise

due diligence after it receives notice of any defect in its appliances or of any change in the physical conditions surrounding them, for this would be placing a premium upon negligent ignorance, as was said, in substance, by the Supreme Court of South Carolina in *Mitchell* v. *Charleston L. & P. Co.,* above [45 S. C. 146, 22 S. E. 767, 31 L. R. A. 577]. *District of Columbia* v. *Woodbury,* 136 U. S. [450], 463, 10 Sup. Ct. 990, 34 L. Ed. 472.'' We think under the facts in this case the instruction was entirely proper.

Error is assigned upon the ruling of the court in giving the following instruction: ''You are instructed that in determining the question as to the knowledge of the defendant of the condition of its electrical transmission wires, that it is bound, not only by what it knew, but also by what it might have known, had it exercised ordinary diligence. It is not necessary that notice or knowledge of a condition shall be proved by direct evidence. It may be inferred from the nature of the duty of [or?] the facts and circumstances of the case.'' The objection was the same as to the previous instruction discussed, and upon the same authority we think the instruction was proper.

Error is urged upon the giving of the following instruction. ''You are instructed that if you find from a preponderance of the evidence that on the 8th day of September, 1932, a branch of a tree came in contact with the electric transmission wire of the defendant situate on the plaintiff's property in such a manner that the wire or wires of said transmission line were allowed to and did communicate fire to said tree and its branches, and that sparks of fire from said tree were blown over to and against a stack of straw belonging to the plaintiff, situated in a southerly direction therefrom, and that the said sparks ignited and set fire to said straw stack, and that said fire was communicated to other stacks of hay and grain in close proximity thereto, and to other property, including particularly the personal property involved in the four causes of action of the plaintiff's com-

plaint, injuring or destroying the same; and that said fire was caused by the contact of the said limbs of said tree with the electric transmission wires belonging to the defendant corporation and originated from the said electric current and transmission wire, and was due to the negligence and carelessness of said defendant corporation in maintaining said wires in close proximity to said tree so that the said branches of said tree could and did come in contact with said wires; then in that case your verdict should be for and in favor of the plaintiff and against the defendant.''

It is said in support of defendant's contention that the instruction is erroneous, that it excludes the question of contributory negligence on the part of plaintiff, in that the use of the words ''and that said fire was communicated to other stacks of hay and grain in close proximity thereto,'' leads the jury to infer that plaintiff was not negligent in building stacks of hay and grain in close proximity to a known danger. The issue of contributory negligence was not raised by the pleadings, and no instructions on that subject were offered by defendant. Therefore, so far as the jury was concerned, the issue of contributory negligence was not in the case, and the giving of the instruction was not error.

Error is assigned on the giving of the following instruction over objection of defendant: ''You are instructed that negligence may be proved by indirect or circumstantial evidence, but the circumstances, if any thus proved, must not only tend to prove negligence, and that such negligence was the proximate cause of the fire, but they must equally tend to exclude any other reasonable conclusions.'' It is argued in support of this contention that the instruction does not contain the element that each of the circumstances or facts in the chain constituting circumstantial evidence must be independently proved by a preponderance of the evidence. The court by other instructions informed the jury that the plaintiff was required to prove all of the material allegations of her complaint by a preponderance of the evidence. It also

instructed the jury that the defendant was not required to prove the cause of the fire, and the burden of proving its cause by a preponderance of the evidence was upon the plaintiff. And, furthermore, the court told the jury that before they could find against the defendant, they must find from a preponderance of the evidence that the fire was caused by its negligence in not having constructed or maintained its electric line properly. We think the jury was fully and fairly instructed on this point.

It is further argued by defendant that the instruction above is defective in that the word "any," in the last sentence, is used instead of the word "all." The instruction, however, is not vulnerable to the criticism made. (*Mellon* v. *Kelly*, ante, p. 10, 41 Pac. (2d) 49.)

The court refused to give the following instruction offered by defendant: "If you believe from the evidence that the lines of the power company were properly constructed of the proper materials, and were properly maintained and were properly inspected in accordance with the practice in such cases usually followed by those engaged in the business of the maintenance and operation of high-tension electric lines, such as appears in the evidence in this case, then the defendant company is not guilty of negligence and there can be no recovery." In a proper case, the offered instruction correctly states the law, but in the case at bar no evidence is found in the record as to what was the proper rule for the maintenance and inspection of a high-tension electric line. In this state of the record, the instruction was inapplicable.

What we have already said disposes adversely of defendant's contention as to specifications of error numbered 8 and 9.

Specifications Nos. 10, 11 and 12 relate to the refusal of three offered instructions on behalf of the defendant. It is urged in support of these specifications that the trial court failed properly to instruct the jury on the question of contributory negligence. After a careful consideration of these offered instructions, we are unable to see where any one or

all of them in any way advise the jury on the question of contributory negligence. Aside from this contention, the matters contained in these offered instructions were fully covered by others given by the trial court. Accordingly, there was no error in their refusal.

The judgment is affirmed.

ASSOCIATE JUSTICES MATTHEWS and MORRIS concur.

MR. JUSTICE STEWART, being disqualified, takes no part in the foregoing decision.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the above decision.