No. 12570

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

DONALD P. SPRANKLE,

               Plaintiff and Appellant,

   -vs-

HENRY DeCOCK and CELINA DeCOCK, and
Mid Yellowstone Electric Cooperative Inc.,
a Montana Corporation,

               Defendants and Respondents.

---

Appeal from:  District Court of the Thirteenth Judicial District,
            Honorable C. B. Sande, Judge presiding.

Counsel of Record:

    For Appellant:

        Douglas Y. Freeman argued, County Attorney, Hardin,
        Montana

    For Respondents:

        Anderson, Symmes, Forbes, Peete and Brown, Billings,
        Montana
        Weymouth D. Symmes argued, Billings, Montana
        Crowley, Kilbourne, Haughey, Hanson and Gallagher,
        Billings, Montana
        Cale Crowley argued, Billings, Montana

---

                  Submitted:  February 26, 1974

                    Decided:  MAY 15 1974

Filed:  MAY 15 1974

*Thomas J. Kearney*
                    Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff and appellant, Donald P. Sprankle, brings this appeal from a summary judgment granted by the district court of Treasure County, in favor of defendants and respondents, Henry and Celina DeCock and Mid-Yellowstone Electric Cooperative, Inc., in a personal injury action.

On the evening of November 26, 1966, Sprankle was severely injured by an electrical shock from a Mid-Yellowstone Electric Cooperative high voltage power line while working on the DeCock Ranch located near Hysham, Montana.

The power line, carrying 7200 volts, was part of Mid-Yellowstone's distribution system. In 1948, the line was relocated from a route running along a county road at the request of DeCock who built a house near the road that year. The relocation route placed the line running through DeCock's land behind his house. In the area where the accident occurred, the line was suspended at a height of 25 to 26 feet and ran over a farmyard area consisting of various buildings and corrals.

Sprankle commenced employment on the DeCock ranch in November of 1958 and lived in a house located on the ranch. On the date of the accident Sprankle and another employee, Julio Morales, began drilling a water well in one of the corrals. The drilling was done at the request of DeCock; however, there is a factual dispute as to whether DeCock picked the exact site, which was directly beneath the high voltage line, or prescribed the method of operation, which involved climbing upon a "farmhand loader" to turn a hand auger with a 23' handle inside a casing pipe about 16'10" in length, which had been driven into the ground a depth of about 9'. DeCock testified:

> "Q. Would you describe briefly how the auger would be used to drill a well of this nature with the casing that you described? A. Well, the way he and I have

done this before, we'd drill the hole down 12 feet with this auger, till we hit gravel, then we lay our auger to the side and shove our casing in. It's just as simple as that.

" * * *

"Q. Would there be anything wrong with placing the casing into the hole that you dug with the shovel, then place the auger inside the casing and drill with the auger from that point down to the gravel? A. Yeah, that would be a stupid way to do it, I think.

"Q. Why? A. Well why work that whole length? Why dig in the casing and pull that auger way up above, get way up in the air to work on top of this casing? Why work that way? I see no reason for it."

Sprankle testified:

"Q. He told you where to put it and told you to drill the well and use that casing, is that right? A. Right.

"Q. Did he give you any more details as to how to go about it? A. No.

"Q. And he had told you to do that in the morning on this particular day? A. Yes, that was one of the jobs to do that day was to put that well, yes, to start it, he didn't say I had to have it finished, but to start it that day.

"Q. What time did he leave again on that-- A. Around a quarter after 5:00, 20 after 5:00. I don't know exactly what time.

"Q. Had he gone out and checked your work before he left or did he just take off? A. He just took off.

"Q. Had he been around where you were working at all that afternoon? A. That afternoon? I don't believe he was around that afternoon, he could have been at one of his other ranches, I don't remember, or in town after something."

It is undisputed that neither/was present on the ranch at the time the accident occurred and that no notification of the well drilling was ever given to Mid-Yellowstone.

Sometime before 6:00 p.m. the hand auger was withdrawn by Sprankle to clean out the dirt and came in contact with the power line, and he was injured by a severe electrical shock.

Sprankle testified that he was aware of what he described as a "jungle" of overhead wires about the farmyard area, all of

- 3 -

which were clearly visible. He stated that he did not know the line involved in his accident was high voltage and that he thought it should have been "insulated".

Mid-Yellowstone introduced the deposed testimony of electrical engineer Maurice Guay as an expert witness. Guay testified that the high voltage line had been installed and maintained in compliance with the minimum safety requirements set forth in the National Safety Code (N.E.S.C.) as adopted by sections 24-125, 24-142 and 24-143, R.C.M. 1947. Guay pointed out the N.E.S.C. provision that "insulation" may be accomplished by nonelectricity conducting material, or by air space, and that the minimum required clearance for the line in question was 20'6". The N.E.S.C did not require that warning signs be placed for this installation and the record shows that neither defendant had ever placed any warning signs in the area of the DeCock ranch. A copy of the N.E.S.C. was tendered as a defendants' exhibit.

Various requests for admission of fact and interrogatories were filed by defendant Mid-Yellowstone in 1968 and 1969. One subject of both was the applicability of and compliance with the N.E.S.C. concerning the line installation. Plaintiff Sprankle never answered directly but stated that his investigation of that matter had not been completed. Sprankle's answer to supplemental interrogatories, filed four days prior to the date set for trial, listed no expert electrical witness.

The sole issue assigned by plaintiff Sprankle is that the existence of material factual issues made it erroneous to grant the summary judgment.

Much of plaintiff's argument before us concerns the various legal theories and evidentiary basis upon which a jury might find that either or both of the defendants were negligent in the performance of a duty owed plaintiff. This argument becomes

moot in the face of the undisputed facts which establish plaintiff's own negligence contributing as a proximate cause of his injuries.

Our law requires all competent capable persons to exercise ordinary care for their own safety, George v. Northern Pacific Ry. Co., 59 Mont. 162, 196 P. 869. Ordinary care has been defined as that degree of care an ordinarily prudent person would exercise under like circumstances to avoid injury. Restatement Second, Torts, Negligence §462-3; Prosser on Torts, 4th Ed., § 65, 416-17; Stevens v. Waldorf-Hoerner Paper Co., 149 Mont. 306, 425 P.2d 832. This has been held to include the duty to make reasonable use of one's faculties to observe and avoid conditions of obvious potential danger, Pickett v. Kyger, 151 Mont. 87, 439 P.2d 57.

In the case of Knowlton v. Sandaker, 150 Mont. 438, 436 P.2d 98, this Court stated:

> "Our conclusion that appellant failed to make a case which could go to the jury is buttressed by the long-established rule in Montana that, '"The plaintiff has made out a prima facie case when his evidence discloses injury to himself and that the negligence of the defendant was the proximate cause of it. [Citing previous cases] It is the rule, also, that when the circumstances attending the injury, as detailed by the plaintiff's evidence, raise a presumption that he was not, at the time in the exercise of due care, he has failed to make out a case for the jury. The burden is then upon him, and if he fails to introduce other evidence to remove the presumption, he is properly nonsuited." George v. Northern Pac. Ry. Co., 59 Mont. 162, 171, 196 P. 869.' Stevens v. Waldorf-Hoerner Paper Products Co., 149 Mont. 306, 425 P.2d 832.
>
> " * * *
>
> "Appellant further contends that sufficient evidence of deceased's due care to take the case to the jury was present under the presumption that an individual exercises ordinary care for his own safety. This principle is codified in section 93-1301-7, subd. 4, R.C.M. 1947, which reads:
>
> "'All other presumptions are satisfactory, if

uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence. The following are of that kind: * * *

"'4. That a person takes ordinary care of his own concerns.'

"In 20 Am.Jur., Evidence, § 158, p. 163, the matter is correctly interpreted as follows: 'Where facts appear, presumptions recede. Thus, the necessity for resorting to presumptions disappears where there is direct and positive evidence upon the matter in issue.'

"The evidence as presented by the appellant was sufficient to rebut the presumption of due care, and further evidence should have been produced in order to get to the jury."

Viewing the plaintiff's evidence in the light most favorable to him it is susceptible of but one conclusion--he climbed onto a farmhand loader and hoisted a long metal pole into contact with high overhead power lines which were clearly visible, which he had lived and worked around for eight years. While admittingly knowing any electrical line was dangerous he did not exercise ordinary care for his safety under the circumstances, which failure proximately caused his injuries.

We find no error in the district court ruling and accordingly the judgment and order appealed from are affirmed.

_____
                                    Justice

We concur:

_____
     Chief Justice

_____

_____

_____
     Justices

- 6 -