No. 12376

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

DORIS HALSEY, Administratrix of the
Estate of Richard Halsey, Deceased, et al.,

Plaintiffs and Respondents,

-vs -

ALBERT H. UITHOF, d/b/a GOLDEN STATE
TRANSPORT,

Defendant and Appellant.

Appeal from:  District Court of the Ninth Judicial District,
              Honorable R. D. McPhillips, Judge presiding.

Counsel of Record:

    For Appellant:

        Jardine, Stephenson, Blewett and Weaver, Great Falls,
        Montana
        Jack L. Lewis and John H. Weaver argued, Great Falls,
        Montana

    For Respondents:

        Hoyt and Bottomly, Great Falls, Montana
        Richard V. Bottomly appeared and John C. Hoyt argued,
        Great Falls, Montana

                                Submitted:  November 15, 1974

                                Decided:  FEB -4 1975

Filed: FEB -4 1975

Thomas J. Kearney
                                Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

In this action defendant Albert H. Uithof secured a jury verdict in his favor after a nine day trial arising from an automobile accident which occurred in Glacier County. Subsequently the district court of Glacier County granted plaintiffs a new trial. From this order granting a new trial, defendant appeals.

Suit was initiated by Richard Halsey, against one David McWhirk, driver of the truck that hit Halsey's truck, and Albert N. Uithof, owner of a truck stalled on the highway, to recover damages for injuries sustained as a consequence of a bizarre series of motor vehicle accidents. Prior to trial, Halsey died of his injuries; his widow was substituted as plaintiff. During the trial, plaintiff settled with McWhirk for $100,000.

Here, due to the/complexity and the volumes of facts presented, it is desirable to list the people involved and their position:

Anderson--------Montana Highway Patrolman.

Bryant---------Passenger in McWhirk truck.

Byington--------Driver of disabled Uithof truck.

Halsey---------Plaintiff and driver of second westbound truck to pass the disabled truck.

Harris---------Truck driver who came upon disabled truck early in the morning.

Hermance-------Driver of first westbound truck to pass disabled truck, just before the accident.

McWhirk--------Driver of eastbound truck involved in accident with Halsey.

Uithof---------Defendant and owner of disabled truck.

Uphams---------Man and wife who were in eastbound car rear ended by Walker vehicle.

Walkers--------Man and wife and child in vehicle which hit the Upham vehicle.

Early in the morning December 22, 1970, a loaded tank truck owned by Uithof and driven by Byington, stalled some 804

- 2 -

feet east and downhill from the top of Whiskey John hill located west of Browning, Montana. The weather was below zero, snow was blowing over the road into the ditches, there were some ice spots on the stretch of road but for the most part the road was bare. After the truck stalled, Byington checked as to why it stalled and found a broken clutch. He attempted to repair the clutch without success. At about 3:15 a.m. a fellow trucker, Harris, stopped and tried unsuccessfully to repair the Uithof truck. Harris offered to take Byington into East Glacier, Montana, the next town west, but Byington stayed with the truck continuing to try to repair it. Two hours later, at about 5:00 a.m., he caught a ride into East Glacier with the first vehicle going either direction after the Harris truck departed. At East Glacier he called a mechanic. When his truck stalled, Byington set out three reflectors to warn oncoming traffic. One reflector was placed some 250 feet west and in front of the stalled truck. He did not put out red flags which he had in a kit in the truck.

The truck had previously been repaired at Cut Bank, Montana, so the mechanic he called was at Cut Bank, some 40 miles east of the stalled truck. That mechanic suggested he contact a mechanic in East Glacier first and this contact was made between the hours of 7:00 and 8:00 a.m. At about 8:00 a.m. Byington and the mechanic went out and attempted to repair the truck without success. Byington then returned to East Glacier where he again called the mechanic in Cut Bank at about 9:45 a.m., requesting that he come out to service the truck. The mechanic left Cut Bank at 10:00 a.m. and arrived in East Glacier an hour later where he picked up Byington and took him back to the stalled truck. After trying unsuccessfully to repair the truck, they sent word into Browning, the nearest town, to call the highway patrol or the sheriff for assistance. By this time of day, between 11:00

- 3 -

a.m. and 12:00 noon, the east-west traffic on the highway had begun to increase.

At about 11:30 a.m. Byington and the mechanic went into Browning where Byington contacted the city police and had them call Highway Patrolman Anderson, and at about the same time he again called Cut Bank to get a wrecker from the Getter Trucking Co., to come and remove the stalled truck. He remained in Browning until the wrecker from Cut Bank arrived at about 1:30 p.m.; he then went back to the truck only to find that a series of accidents had occurred.

Highway Patrolman Anderson who was stationed in East Glacier, received a call notifying him of the disabled truck at about 11:45 a.m. He arrived at the truck location about 12:15 p.m. and tried to direct traffic for ten or fifteen minutes without too much success. Before leaving the scene he moved the reflector placed by Byington west of the stalled truck, to a point on the hill crest where he felt it would warn eastbound traffic. Neither Byington or Anderson put out any flags, although both the truck and the patrol car were equipped with them.

At about 12:30 p.m. Anderson went into Browning, some three to four miles east of the stalled truck, to get assistance to flag traffic until the wrecker could arrive.

During the next fifteen to twenty minutes the scene on the east slope of Whiskey John hill changed. First, on the scene coming over the hill crest from the west came the Upham car containing Mr. and Mrs. Donald Upham. They were driving a 1968 Rambler. They had started from East Glacier and prior to leaving had been informed by a son that there was a stalled truck on the road between there and Browning. They described the road conditions as good, considering that it was wintertime, and they drove at a speed of from 55 to 60 miles per hour, before coming to the

- 4 -

location of the stalled truck. Upon coming over the crest of the hill they saw the reflector placed by Anderson and slowed down to about 25 miles per hour. When they got some 100 feet down from the crest of the hill, they saw a westbound truck driven by Hermance going around the stalled truck further down the hill, so they stopped in their lane, the eastbound lane, to let the Hermance truck pass the stalled truck. Just at that time, the Walker car came over the hill traveling east and ran into the rear end of the stopped Upham car.

The Uphams saw the Walker car, knew it was going to hit them, so they were able to brace themselves and thereby avoided serious injury. Walker was returning from the west to Browning with his wife and son. He testified he had been driving about 60 miles per hour but that at the crest of the hill he saw the reflector and slowed down. At about the time of the rear end accident between the Upham car and the Walker car, the Hermance truck was abreast of the two cars and in its proper lane. It went to the crest of the hill, stopped and, according to the driver Hermance, he turned on his lights and blinkers and then tried to stop a truck driven by McWhirk which was coming over the crest of the hill eastbound at from 45 to 60 miles per hour. McWhirt denied that Hermance's warning lights were on, but acknowledges that Hermance did wave at him.

McWhirt's father-in-law Bryant, also a trucker, was a passenger in McWhirt's truck. They saw the reflector as they passed over the crest of the hill but said it was lying down on the highway. They observed both lanes of the highway blocked so McWhirt attempted to go to the north side of the highway and use the borrow pit, but in doing so his trailer skidded into a third westbound truck driven by Halsey, which was the immediate cause of Halsey's injuries and resulting death.

- 5 -

One other eastbound vehicle, referred to as the pickup with two young men in it, arrived either just before the McWhirt-Halsey accident or just after, but except for helping out after the accident they were not involved.

The issues assigned for this Court's consideration are several, but the primary issue is whether or not the trial court erred in entering an order granting a new trial. Other issues are:

1. May a district court entertain and grant a motion for new trial when the motion fails to state "with particularity the grounds therefor" as required by Rule 7(b)(1), M.R.Civ.P.?

2. Should the defendant's motion for a directed verdict have been granted?

3. If any error or defect occurred at trial, was such error or defect of a nature which affected the substantial rights of plaintiff so that the jury verdict in favor of defendant was inconsistent with substantial justice? In other words, did the district court, in granting a new trial, fail to adhere to the requirements of Rule 61, M.R.Civ.P.?

For the past several years this Court has been calling the attention of the bench and bar to its concern with the failure of trial courts to state reasons for the granting of new trials. Beebe v. Johnson, ____Mont.____, 526 P.2d 128, 31 St.Rep. 702; Haynes v. County of Missoula, 163 Mont. 270, 517 P.2d 370, 30 St.Rep. 1083; Campeau v. Lewis, 144 Mont. 543, 398 P.2d 960.

Here, plaintiff's motion for a new trial was merely set forth in the conclusionary language of section 93-5603, R.C.M. 1947. That motion stated:

> "In the alternative, the plaintiff moves the
> court for an order vacating and setting aside
> the verdict of the jury and granting plaintiff
> a new trial in the above-entitled cause upon
> the following grounds, to wit:

"(1) Irregularities in the proceedings of the court, orders of the court and abuse of discretion on the part of the court by which plaintiffs were prevented from having a fair trial.

"(2) Insufficiency of the evidence to justify the verdict or other decision, or that it is against the law.

"(3) Error in law occurring at the trial and excepted to by the plaintiff."

This wording is almost an exact reproduction of the wording of subsections 1, 6 and 7, section 93-5603, R.C.M. 1947, which details the causes for which a new trial may be granted. Rule 7(b), M.R.Civ.P. provides that such motions shall "state with particularity the grounds therefor * * *." Rule 59, M.R.Civ.P., provides for the granting of such a motion. Hereafter a statement of the grounds in the language of the statute will be insufficient for the granting of a new trial.

While motions substantially identical to this motion have been previously presented to this Court and the contents have not been challenged or found insufficient, in view of the fact that Rule 59, M.R.Civ.P., is in the process of being changed to require trial courts to state with particularity the grounds for granting a new trial, the time has come to require a similar requirement be placed on the moving party. Rule 7(b)(1), M.R.Civ.P., requires that the grounds for any motion, including a motion for new trial, be stated with particularity:

"(1) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion." (Emphasis supplied.)

This Court in Martello v. Darlow and Lovely, 151 Mont. 232, 235, 441 P.2d 175, speaking of section 93-5603, R.C.M. 1947, said:

"To authorize granting a new trial, the error complained of must be an error 'materially affecting the substantial rights of [the aggrieved party]' (section 93-5603, R.C.M. 1947) and the error must be of such character that refusal to grant a new trial 'appears to the Court inconsistent with substantial justice.' (Rule 61, M.R.Civ.P.) In other words, if the substantial rights of the aggrieved party are not prejudiced, only 'harmless error' is involved not authorizing a new trial to be granted. Within these limitations, the trial court has broad discretion to grant a new trial and will not be reversed except for abuse thereof. [Citing cases]"

Here, we find the motion for a new trial was inadequate and defective in its essential respects in that it failed to meet the recognized statutory requirements.

Appellant's issue two questions whether or not appellant was entitled to a directed verdict because of independent intervening causes.

Appellant argues that even if Byington or Uithof were negligent, that such negligence, if any, was not the proximate cause of the McWhirk-Halsey accident in that it was superceded by the intervening negligence of Walker and McWhirk; that the stalled truck did nothing more than furnish a condition by which the injury occurred as the result of a subsequent independent act of a third person; and the fact that Byington failed to set flags 100 feet in front of his stalled vehicle was at most a remote cause, for the accident occurred more than 100 feet in front of the stalled truck.

Appellant further argues that Walker and McWhirk were negligent in that they were driving too fast to stop within their clear range of vision which, allegedly, was 645 feet from the stalled truck. Further, that Byington's failure to anticipate Walker and McWhirk's negligence is not negligence on the part of Byington. The question then is: Was there an independent intervening act?

Respondent argues that any intervening act must be the

wrongful act of another, and that no negligence was shown by McWhirk; further, that Byington did not have to foresee the exact consequences of the accident, but that some injury would occur from the stalled vehicle, and that there can be more than one proximate cause of an injury and if the intervening acts are forseeable to a reasonable man, then it is not an independent intervening cause.

We agree with the proposition that where one has negligently caused a condition of danger, he is not relieved of responsibility for damage caused to another merely because the injury also involved the later misconduct of someone else. But, this is true only if both negligent acts are in fact concurring proximate causes of the injury; and it is not true if the later negligence is an independent, intervening sole cause of the incident. Boepple v. Mohalt, 101 Mont. 417, 54 P.2d 857.

In determining whether the negligence in creating a hazard (the truck stalled on the highway) was a proximate cause of the accident, this test is to be applied: Did the wrongful act, in a natural continuous sequence of events, which might reasonably be expected to follow, produce the injury? If so, it is a concurring proximate cause of the injury even though the later negligent act of another [Walker and McWhirk] cooperated to cause it. On the other hand, if the latter's act of negligence in causing the accident was of such a character as not reasonably to be expected to happen in the natural sequence of events, then such later act of negligence is the independent, intervening cause and therefore the sole proximate cause of the injury. Jimison v. United States, 267 F.Supp. 674; Sumner v. Amacher, 150 Mont. 544, 437 P.2d 630; DeVerniero v. Eby, 159 Mont. 146, 496 P.2d 290; Ford v. Rupple, 161 Mont. 56, 504 P.2d 686; Brandenburger v. Toyota Motor Sales, ____Mont.____, 513 P.2d 268; 30 St.Rep. 808.

- 9 -

Applying the foregoing test to the instant situation, it was reasonable to foresee that the eastbound drivers [Walker and McWhirk] would see the truck parked on the highway. Considering Montana's case law and the federal court views on our law, this Court again finds that abstract foreseeability is not sufficient to meet the requirements of proximate cause.

Applying Jimison here, appellant was not obliged to foresee or anticipate that either Walker or McWhirk would come over the hill at such speeds that they could not stop within the assured clear distance ahead of them. Neither was appellant obliged to foresee that Walker would continue over the hill without braking after seeing the reflector at the top and should have realized there might be trouble on the other side. All of this leads to the conviction that the district court should have granted appellant's motion for a directed verdict at the close of respondent's case-in-chief.

We have reviewed the various other issues raised by appellant but confine our decision to issues one and two as controlling. Accordingly, the order of the court granting respondent a new trial is vacated and set aside. The jury verdict in favor of appellant and the judgment are affirmed.

_John Conway Harrison_
Justice

We concur:

_Frank I. Haswell_
Chief Justice

_Gene B. Daly_

_Frank H. Haswell_

_Wesley Castles_
Justices

- 10 -