No. 89-482

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

SPENCER SIZEMORE,

       Plaintiff & Respondent,

-v-

THE MONTANA POWER COMPANY; and DOE I and
KEITH KESSEL, individual, and d/b/a
KESSEL CONSTRUCTION COMPANY; and KESSEL
CONSTRUCTION COMPANY; and DOE II,

       Defendants and Appellants.



---

APPEAL FROM:   District Court of the Seventeenth Judicial District,
In and for the County of Blaine,
The Honorable Leonard Langen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Brian Lilletvedt; Bosch, Kuhr, Dugdale, Martin &
        Kaze; Havre, Montana

    For Respondent:

        Morton B. Goldstein; Goldstein Law Firm; Havre,
        Montana

    Amicus:

        Ira Eakin; Lynaugh, Fitzgerald, Eiselein & Eakin;
        Billings, Montana (Montana Trial Lawyers' Assn.)
        Gary L. Graham; Garlington, Lohn & Robinson;
        Missoula, Montana (Montana Defense Trial Lawyers,
        Inc.)

                Submitted:  October 25, 1990

                Decided:  December 13, 1990

Filed:

---

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Defendant, Montana Power Company (MPC), appeals from a jury verdict of the Seventeenth Judicial District, Blaine County. The jury awarded plaintiff, Spencer Sizemore (Sizemore), damages for injuries sustained when an I-beam he was holding came into contact with a high voltage power line owned by MPC. The jury found that 15% of Sizemore's injuries was attributable to his own negligence, 20% was attributable to his co-worker, Keith Kessel (Kessel), and 65% was attributable to the negligence of MPC. We affirm.

We rephrase the issues as follows:

1) Whether the District Court erred when it allowed Sizemore's expert witness to testify concerning sections of the 1977 National Electric Safety Code (NESC);

2) Whether the District Court erred when it ruled as a matter of law that the minimum height requirement set forth in the 1984 edition of the NESC did not apply to this case;

3) Whether the District Court erred when it refused MPC's proposed jury instructions 15, 15A and 15B;

4) Whether the negligence of Sizemore, and his co-worker Kessel, was a superseding, intervening event which severed all liability on the part of MPC;

5) Whether the evidence was insufficient to support the jury's conclusion that MPC was responsible for sixty-five percent of Sizemore's injury.

The facts are simple. On September 8, 1984, Spencer Sizemore gratuitously agreed to help Keith Kessel move some steel I-beams.

2

Kessel is the owner of Kessel Construction Company. The company constructs concrete buildings, steel buildings and grain bins. It operates out of the Kessel Construction Yard in Blaine County.

On the day of the accident Sizemore and Kessel went to the Kessel Construction Yard, where the I-beams were located. They planned to move the beams with a boom truck. Kessel and Sizemore moved some wooden stubs to the area where they planned to move the beams so that they could set the beams on the stubs. After setting the stubs in place, Sizemore guided Kessel as he backed the boom truck up to the beams and they hooked up the load.

As they hooked an I-beam to the boom truck, Sizemore and Kessel discussed safety. Particularly, they talked about the need to avoid powerlines that ran across and above the Kessel Construction Yard.

After hooking a beam to the boom truck, Kessel began to back up with the load. While backing up, the boom hit one of the powerlines and Sizemore, who was holding on to the beam, received an electrical shock. As a result of the shock, Sizemore received burns to his left leg and right hand. He was hospitalized in Havre and Missoula, where he had surgery to remove the ring finger on his right hand and repair damage to his left leg.

On November 28, 1986, Sizemore filed a complaint against both MPC and Keith Kessel, individually and d/b/a Kessel Construction Company. In his complaint, Sizemore alleged that he suffered permanent injuries as a result of the accident. He further alleged that MPC negligently placed the power line in such a manner as to

grossly and recklessly endanger his life. He also alleged that Kessel negligently operated the boom truck by backing it into the powerline.

MPC answered Sizemore's complaint and generally denied his allegations as to the cause of his injuries. MPC maintained that Sizemore's injuries were caused by his own negligence. It therefore filed a motion for summary judgment contending that Sizemore's injuries were caused by the superseding and intervening negligent acts of Kessel and Sizemore. This motion was denied. At trial the jury found that 15% of Sizemore's injuries was attributable to his own negligence, 20% of his injuries was attributable to Kessel's negligence and the remaining 65% was attributable to the negligence of MPC. MPC filed its motion for judgment notwithstanding the verdict or in the alternative for a new trial. These motions were denied and MPC filed this appeal.

## Issue I

MPC argues that the trial court erred when it allowed Sizemore's expert witness, Robert Leo, to testify concerning certain safety standards contained in the 1977 edition of the National Electric Safety Code (NESC). These standards set forth height requirements for powerlines. According to MPC, the 1984 edition of the NESC should have been used because Sizemore's injury occurred in 1984. It argues that the trial court erred in allowing Mr. Leo to refer to the older 1977 version during his testimony.

We need not delve into the merits of MPC's argument. As

Sizemore points out, MPC failed to object to this testimony. Without a proper objection, MPC failed to preserve possible error for purposes of appeal. Matter of B.L.O. (1984), 213 Mont. 164, 689 P.2d 1246. Accordingly, we decline to address this issue or to find reversible error on the part of the District Court.

Issue II

MPC argues that the NESC provides that a power company need only elevate its power lines twenty feet above the ground in areas such as the Kessel Construction Yard. It supports this contention through reference to section 232 of the NESC, which indicates that the minimum height requirement for powerlines similar to the one involved in this case is 20 feet. Apparently, in cross examining Mr. Leo, counsel for MPC attempted to insinuate that this 20 foot standard was the height required by the NESC.

Upon objection, the trial court ruled that such questioning misrepresented Mr. Leo's former testimony. The trial court pointed out that this 20 foot figure was modified by a footnote which explained that the figure was based upon vehicle operating heights of less than 14 feet. Therefore, if vehicles, with maximum heights of 14 feet operated under powerlines, the code mandated a minimum height of 20 feet. If vehicles higher than 14 feet operated in the area however, the lines must be at least six feet higher than the maximum operating height of the vehicles. Based upon this interpretation of the NESC, the trial court sustained Sizemore's objection and forbid MPC's counsel from asking what it considered misleading questions.

5

We have reviewed section 232 of the NESC. Obviously, this section was intended to require power companies to provide lines at least six feet higher than the maximum height of vehicles passing underneath. This conclusion comports with Mr. Leo's testimony. We therefore hold that the trial court's ruling on this issue was a correct interpretation of both Mr. Leo's testimony and the standards contained in the NESC.

## Issue III

Throughout trial and on appeal, MPC has argued that Sizemore's and Kessel's negligence was an unforeseeable event. It maintains that because this event was unforeseeable, it should be regarded as a superseding, intervening event which cuts off all legal liability on the part of MPC. See Kitchen Krafters v. Eastside Bank of Montana (1990), 47 St.Rep. 602, 789 P.2d 567.

In order to emphasize this theory MPC submitted several instructions to the District Court for presentation to the jury. These instructions stated:

PROPOSED INSTRUCTION NO. 15

If you find the Defendant Keith Kessel's conduct was the operative conduct or superseding cause which intervened as the proximate cause of Spencer Sizemore's injuries, you must return your verdict for the Defendant Montana Power Company.

PROPOSED INSTRUCTION NO. 15-A

If an act of negligence subsequent to the first act of negligence was of such a character as not reasonably to be expected to happen in the natural sequence of events, such later act of negligence is the independent, intervening cause and, therefore, the sole proximate cause of the injury.

PROPOSED INSTRUCTION NO. 15-B

> Where one has negligently caused a condition of danger, he is not relieved of responsibility for damage caused to another merely because the injury also involved the later misconduct of someone else, if that conduct was reasonably foreseeable.

The District Court rejected these instructions. It rejected Instruction 15 because it felt that its language would confuse the jury. The lower court stated its belief that the wording of the instruction was inconsistent with Montana's comparative negligence law.

MPC, on the other hand, argues the instruction is an accurate statement of Montana law. It points out that its language is taken directly out of a decision rendered by this Court in 1986. Dvorak v. Matador Service Inc. (1986), 223 Mont. 98, 727 P.2d 1306. In Dvorak, the plaintiff sued for injuries incurred when his employer ordered him to enter a tank which had previously contained poisonous chemicals. The tank car was owned by Matador Service Inc. We held that the employer's grossly negligent conduct was the "operative cause" or superseding force of Dvorak's injuries. Dvorak, 727 P.2d at 1310. Based upon this conclusion we held that Dvorak could not establish proximate cause and therefore affirmed the lower court's order of summary judgment.

Recently this Court has expanded and modified the law of proximate cause. This trend began in the seminal case of Young v. Flathead County (1988), 232 Mont. 274, 757 P.2d 772, and has continued through our decisions in Kitchen Krafters Inc. v. Eastside Bank of Montana (1990), 47 St. Rep. 602, 789 P.2d 567; and Thayer v. Hicks (1990), 47 St. Rep. 1082, 793 P.2d 784. In each

7

of these cases we have set forth the rule that proximate cause has its basis in foreseeability. See Kitchen Krafters, 789 P.2d at 575.

The language from Dvorak, upon which Instruction 15 is based, does not incorporate the doctrine of foreseeability and its relationship to proximate cause as set forth in Young and its progeny. Moreover, the language "operative conduct or superseding cause" indicates that Sizemore's accident may have had only one cause. Such a connotation is inconsistent with the law concerning comparative negligence. Given these facts, we hold that the instruction is faulty and the District Court could properly refuse its submission to the jury.

Similarly, Instruction 15-A was properly refused. This instruction is based upon Halsey v. Uithof (1975), 166 Mont. 319, 532 P.2d 686. Halsey was decided before Montana adopted comparative negligence. Before this law was adopted a plaintiff could not recover if he was partially responsible for his injuries. Many of the older cases decided under this scheme of liability often denied such plaintiffs recovery on the grounds that their negligence was the sole or proximate cause of their damages. Such language is no longer applicable, however. Under comparative negligence a plaintiff can recover even though the accident causing his injuries is caused by more than one actor, including himself. The language of Instruction 15-A does not adequately set forth this concept. The instruction is also covered by other approved instructions. We hold the instruction was properly denied.

8

The lower court also denied Instruction 15-B, obviously holding that it was adequately covered by other instructions already approved. Instruction 15-B deals with foreseeability. In order to incorporate foreseeability into the instructions given to the jury, the District Court utilized a modified version of the standard proximate cause instruction, which was used at the time of trial. Instruction No. 13 submitted to the jury states:

> The proximate cause of an injury is that cause which in a natural and continuous sequence, unbroken by an unforeseeable, new and independent cause, produces the injury, and without which it would not have occurred. (Added words underlined.)

This instruction when read in conjunction with others, adequately sets forth the concept of foreseeability and its application to proximate causation. The concept of foreseeability was set forth to the jury through Instruction No. 13, instructions on negligence, proximate cause, and the duty of the power company. Also, it was discussed in closing arguments given by counsel. The lower court's refusal to submit Instruction 15-B to the jury does not constitute reversible error. In light of instructions given regarding negligence and comparative negligence, it was redundant. Furthermore, the instruction is confusing, especially by the use of the word "involved" and the word "conduct."

However, as an aside, we note that this instruction (15-B) has merit in the use of the word "reasonably" (the lack of which is not reversible error) as an adverb before the word "foreseeable." This addition would help explain the concepts of ordinarily prudent person and natural and probable consequences in setting forth the

issue of foreseeability in an instruction applicable to the appropriate case. These concepts were included in an instruction recently set forth in Kitchen Krafters v. Eastside Bank of Montana (1990), 47 St.Rep. 602, 689 P.2d 567.

## Issue IV

MPC maintains that the District Court erred when it denied MPC's motion for summary judgment, motion for directed verdict and motion for judgment notwithstanding the verdict. It bases this argument on its belief that Kessel's and Sizemore's negligence was unforeseeable, and that therefore Sizemore cannot establish proximate cause. In support of its contentions, MPC cites a number of cases decided by this Court.

Most of these cases arose before the legislature passed Montana's comparative negligence statute. See e.g. Halsey v. Uithof (1975), 166 Mont. 319, 532 P.2d 686; Sprankle v. DeCock (1974), 165 Mont. 274, 530 P.2d 457; Turley v. Montana Power Company (1975), 167 Mont. 39, 534 P.2d 1254. Many of these decisions contain language concerning causation which, although relevant in a contributory negligence context, is no longer applicable under our comparative negligence scheme. For this reason, MPC's reliance upon these cases is misplaced.

However, MPC also relies upon Dvorak v. Matador Services Inc. (1986), 223 Mont. 98, 727 P.2d 1306, which arose after the comparative negligence statute was enacted. Admittedly, this case lends some support to MPC's arguments. Since Dvorak was decided, however, we have issued a number of opinions which render much of

10

its language obsolete. As stated earlier, this Court has sought in recent decisions, to clarify the doctrine of proximate cause. Therefore, we rely upon these decisions in formulating the holding in the case now before us.

The doctrine of proximate cause has been developed in an effort to prevent unlimited liability. As observed in a recent case "the consequences of a wrongful act can extend in time for years--perhaps [even] beyond the defendant's lifetime." Kitchen Krafters Inc v. Eastside Bank of Montana (1990), 47 St.Rep. 602, 789 P.2d 567. In recognition of this fact, the courts have sought to devise a means to cut off a defendant's liability when principles of equity and common sense demand such a result. By far the most common method of achieving this end is through resort to the foreseeability analysis.

This method of analysis requires a trier of fact to determine whether the consequences of a defendant's actions were reasonably foreseeable. If a plaintiff's damages were reasonably foreseeable to a man of ordinary prudence, liability will usually follow. However by the same token the law refuses to hold a defendant responsible for consequences which, although possible are not reasonably foreseeable, or are generally regarded as freakish, bizarre or unpredictable. Prosser and Keeton on Torts, 5th Edition § 43 (1984).

Foreseeability can be determined in one of two ways. Some courts analyze the issue under the element of duty. These courts take the view that the scope of a defendant's duty is determined

by the foreseeability of any harm which may arise as a result of his negligent conduct. See e.g. Palsgraf v. Long Island Railroad Co. (New York 1928), 162 N.E. 99, 100. Other courts have analyzed foreseeability under the issue of proximate cause. In doing so, they have taken the view that all persons owe a duty to the world at large to act reasonably in order to prevent injury to their fellow man. Palsgraf, 162 N.E. at 104 (Andrews dissenting). If this duty is breached, it then becomes necessary to determine whether the consequences of the breach were reasonably foreseeable to the defendant. If the consequences were reasonably foreseeable, proximate cause is established and liability will follow.

In Kitchen Krafters, Inc. v. Eastside Bank of Montana (1990), 47 St.Rep. 602, 789 P.2d 567, this Court analyzed foreseeability under the doctrine of proximate cause. In the present case, MPC maintains that Sizemore's injuries were unforeseeable because his negligence combined with Kessel's was a superseding, intervening event. Therefore, we analyze the facts now before us under this doctrine and apply them to the law established in Kitchen Krafters.

As stated earlier, MPC argues that the events surrounding Sizemore's accident were unforeseeable. They maintain that it was impossible to foresee that Kessel and Sizemore would be so completely inattentive and negligent so as to run the boom truck into the overhead powerline. They further argue that they had no way of knowing that the truck would be operated in the vicinity of the powerline. Based upon these contentions, MPC maintains that Kessel's and Sizemore's acts were unforeseeable and therefore

12

proximate cause cannot be established. Without proximate cause MPC cannot be held liable for any alleged negligence associated with the height of the powerline.

Simply stated, the issue raised by MPC is whether the antecedent acts of negligence committed by Kessel and Sizemore were superseding, intervening events which cut off legal responsibility on the part of MPC. By definition, a superseding, intervening event is an unforeseeable event that occurs after the defendant's original act of negligence. Its presence will generally serve to cut off liability on the part of the defendant. Kitchen Krafters, 789 P.2d at 576.

It is true that sometimes an antecedent act by a third person or by the plaintiff is unforeseeable. For example, numerous courts have held that the criminal or intentional actions of a third person may not be foreseeable. Cole v. German Savings and Loan Society (8th Cir. 1903), 124 F. 113. Similarly, a grossly negligent act on the part of a plaintiff may properly be considered unforeseeable.

The case now before us, however, presents neither of these fact scenarios. Rather, the case requires us to determine whether the circumstances surrounding Sizemore's accident was a reasonably foreseeable consequence of MPC's negligent placement of its powerline.

We begin with the premise that "the standard of reasonable conduct may require the defendant to protect the plaintiff against 'that occasional negligence which is one of the ordinary incidents

13

of human life, and therefore to be anticipated'" Prosser and Keeton on Torts, 5th Edition § 44 (1984). Based upon this rule, it is apparent that at times a power company has a duty to maintain its lines in such a manner as to prevent the type of accident that occurred in this case.

After a careful review of the facts, we conclude that Kessel's and Sizemore's actions were not extraordinarily negligent. On the contrary, the boom truck's contact with the line could be a normal consequence of MPC's negligent act. It was therefore reasonably foreseeable. This conclusion is supported by testimony presented by expert witnesses at trial. Sizemore's expert testified that 85% of all electrical injuries are caused by human frailty or mistake. MPC's witness acknowledged that the majority of such accidents are due to human mistakes.

Given these facts, we hold that the jury could properly conclude that the intervening negligence of Kessel and Sizemore was reasonably foreseeable and proximate cause was established. Therefore, the lower court did not err in refusing to grant MPC's motions for summary judgment, directed verdict or judgment notwithstanding the verdict.

## Issue V

Finally, MPC argues that there was insufficient evidence to support the jury's conclusion that it was responsible for sixty-five percent of Sizemore's injury. In support of this contention MPC recites evidence which established both Kessel's and Sizemore's knowledge of the location and danger of the powerlines. They

maintain that their negligence if any, was in failing to raise or relocate the powerlines. This act constituted mere passive negligence, as opposed to the active negligence of Kessel and Sizemore. Given these facts, the evidence does not support the jury's apportionment of damages.

We disagree. This Court's function in reviewing jury verdicts is necessarily very limited. We must review the evidence in a light most favorable to the prevailing party to determine whether substantial evidence supports the jury's verdict. Anaconda Co. v. Whittaker (1980), 188 Mont. 66, 610 P.2d 1177. This Court cannot reweigh the evidence or disturb the findings of a jury unless that evidence is so inherently impossible or improbable as not to be entitled to belief. Reynolds v. Trbovich Inc. (1949), 123 Mont. 224, 210 P.2d 634.

The evidence presented at trial established that MPC knew that construction activity took place at the Kessel Yard. Apparently, MPC employees had been at the yard approximately 100 times over the years preceding the accident. Evidence was also introduced which established that a similar incident, although with no injuries, occurred a few months prior to Sizemore's accident. The evidence is conflicting on whether MPC was notified of the incident. However, the incident involved contact with a powerline that was connected to the same power pole that connected the powerlines involved in the Sizemore accident. Finally, the record shows that MPC had been at the construction yard and had buried cables earlier in 1984, several months before the accident.

These facts rise to the level of substantial evidence needed to support the jury's apportionment of damages. As stated earlier, this Court is precluded from reweighing the evidence. Accordingly, the jury's verdict is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

Justice Fred J. Weber dissents as follows:

My dissent focuses on Issue III in which the majority concludes that it was not error to refuse any of defendant's proposed Instructions 15, 15-A and 15-B. The majority concludes that the theories on the part of the defendant are adequately set forth in Instruction No. 13 which is set forth as follows:

> The proximate cause of an injury is that cause which in a natural and continuous sequence, unbroken by an <u>unforeseeable</u>, new and independent cause, produces the injury, and without which it would not have occurred. (Added words underlined.)

The majority concludes that Instruction No. 13 adequately sets forth the concept of foreseeability and its application to proximate causation. I suggest that the analysis of Instruction No. 13 is not consistent with Kitchen Krafters Inc. v. Eastside Bank of Montana (Mont. 1990), 789 P.2d 567, 47 St.Rep. 602. Instruction No. 13 speaks of "The" proximate cause in a case where there are three different causes to be considered. The instruction essentially uses the "but for" approach as it states that the proximate cause is that "without which the injury would not have occurred." As pointed out in <u>Kitchen Krafters</u>, 789 P.2d at 574, 47 St. Rep. at 610, causation in fact is determined by the "but for" test where applicable. However, if two causes concur to bring about an event then the "substantial factor" test is used. Under <u>Kitchen Krafters</u>, it appears that Instruction No. 13 improperly focuses on the negligence of the defendant Montana Power Company without reference to any concurring negligence.

The defendant's problem with Instruction No. 13 is that it

17

contends there is a failure to set forth its theories on foreseeability. The general rule is stated in <u>Kitchen Krafters</u>, 789 P.2d at 575, 47 St.Rep. at 611, as follows:

> Proximate cause is normally analyzed in terms of foreseeability. Simply stated, one is only liable for consequences which are considered to be reasonably foreseeable. Prosser and Keeton at § 43. If the consequences of one's wrongful act are not reasonably foreseeable, then it follows that it was not proximately caused by that act. Using this analysis, one must look forward through the chain of causation in order to determine whether the events which occurred were foreseeable. If they were, the element of proximate cause is satisfied and liability will attach.

In analyzing the instructions in <u>Kitchen Krafters</u>, the Court concluded that the instructions were inadequate and suggested that on remand a proper instruction on proximate cause with regard to foreseeability would state:

> In order for the defendant's negligence to be the proximate cause of the plaintiff's injury, it must appear from the facts and circumstances surrounding the accident that the defendant as an ordinarily prudent person, could have foreseen that the plaintiff's injury would be the natural and probable consequence of the wrongful act.

The proposed instruction in <u>Kitchen Krafters</u> would have been much more helpful in the present case because it focuses on the aspect that the defendant as an ordinarily prudent person could have foreseen that the plaintiff's injury would have been the natural and probable consequence of the wrongful act. Instruction No. 13 as given is much less helpful.

That is particularly true in the present case where we have a passive condition of danger created by the defendant Montana Power Company, which is followed in time by subsequent acts of negligence on the part of both Kessell and the plaintiff. This

raises the issue of superseding, intervening causes. The instruction is totally inadequate in articulating the concept of superseding, intervening cause. Instruction No. 15-A as proposed by the defendant properly emphasized that if an act of negligence, such as that of the plaintiff or Kessell, subsequent to the first act of negligence was of such a character as not reasonably to be expected to happen in the natural sequence of events, then that later act is an independent, intervening cause. I believe that instruction to be an accurate statement of the law which cannot be derived from other instructions. It appears to me to be comparable to the instruction suggested in the majority opinion in Kitchen Krafters, which required the jury to determine if the defendant as an ordinarily prudent person could have foreseen that plaintiff's injury would be the natural and probable consequence of the defendant's negligence. To restate this in accordance with the factual determination which should have been required of the jury in the present case, the jury should have been instructed in such a manner as to require it to focus on whether or not the Montana Power Company, as an ordinarily prudent person, could have reasonably foreseen that Kessell's backing into the power line and the plaintiff's injury would be the natural and probable consequence of its failure to raise the power line above 20 feet in height.

A proper instruction on this aspect was also defined by this Court in Jacobson v. State (1989), 769 P.2d 694, 698, 46 St.Rep. 207, 212, where this Court approved the following instruction:

An intervening cause will relieve a Defendant of liability for negligent acts where the cause is one which the Defendant could not reasonably anticipate under the circumstances.

I conclude that there has been a failure to properly instruct the jury on the defendant's theory of the case and I would therefore reverse and remand.

_____ Justice